MISSOURI, KANSAS AND TEXAS RAILWAY COMPANY, a Corporation, Plaintiff, *v.* UNION TRUST COMPANY of New York, a Corporation, and CENTRAL TRUST COMPANY of New York, a Corporation, Defendants.

*Mortgage sinking fund — right of a creditor to refuse to accept payment of his claim before it is due.*

A debtor has no more right to pay the principal of a debt before it is due than he has to refuse to pay it when it becomes due, and the rights of a creditor are correlative.

The Tebo and Neosho Railroad Company in 1870 made a mortgage to a trust company, to secure certain bonds, containing a clause providing for the creation of a sinking fund to discharge the bonds which, in effect, provided for a payment by the railroad to the sinking fund of $20,000 a year, with interest at seven per cent, beginning in 1873, "by the operation of which sinking fund the whole principal of said bonds will be redeemed in thirty years from the date of the first annual payment." It was further mutually agreed that each year there should be a designation of bonds for redemption equal in amount to the accumulation in the sinking fund. In 1871 the Missouri, Kansas and Texas Railway Company acquired the property of the Tebo and Neosho Railroad Company, issued a new mortgage to take up the bonds of the latter company, became the owner of most of them, and afterwards paid in full the bonds issued in substitution. No payments to the sinking fund were made, except in one year, and then to but a small amount; but in 1895, certain bonds of the Tebo and Neosho Railroad Company being still outstanding, the Missouri, Kansas and Texas Railway Company, proceeding upon the theory that it was indebted to the sinking fund

in an amount largely in excess of these latter bonds, offered to pay to the trust company the principal and interest of these bonds outstanding and claimed that upon such payment the bonds should be canceled. The trust company refused to accept the payment upon such terms, and thereupon the controversy was submitted without action.

*Held,* that as the bonds were not due, and as there was no privilege given to the railroad company to make any payment larger than the stipulated annual payment, it had no right, unless such right was secured by the sinking fund provision of the mortgage, to pay its creditor before the debt was due;

That a calculation of the annual payment and its interest, in the view most favorable to the railroad company, would show that had the stipulated payments been made there would still remain bonds outstanding in excess of the number now sought to be redeemed;

That the fact that the Missouri, Kansas and Texas Railway Company had become the owner of most of the bonds, and had become largely indebted to the sinking fund, did not affect the right of the holders of the outstanding bonds to retain a valuable security which was not yet due and payable.

SUBMISSION of a controversy, upon an agreed statement of facts, pursuant to section 1279 of the Code of Civil Procedure.

*Simon Sterne,* for the plaintiff.

*Wheeler H. Peckham,* for defendant Union Trust Company.

*Butler, Stillman & Hubbard,* for defendant Central Trust Company.

O'BRIEN, J. :

The question presented is one relating to the construction of the sinking fund provision in a mortgage made by the Tebo and Neosho Railroad Company, as party of the first part, to the Union Trust Company of the city of New York, party of the second part, under date of June 1, 1870. The sinking fund provision is as follows :

"*Fifth.* The party of the first part, in consideration aforesaid, further covenants and agrees with the party of the second part and its successors in this trust, that the said party of the first part, its successors and assigns, will, on the first day of June, A. D. 1873, and on the first day of June annually thereafter, pay to the party of the second part, or its successors as aforesaid, as a sinking fund, in gold coin of the United States of America, a sum equal to one per cent of the aggregate principal of the bonds secured hereby,

together with interest thereon at the rate of seven per cent per annum, in gold coin as aforesaid, by the operation of which sinking fund the whole principal of said bonds will be redeemed in thirty years from the date of the first annual payment.    And it is mutually agreed between the parties hereto that the said party of the second part shall, in each and every year after said first payment, designate for redemption by lot an amount of said bonds equal to the accumulations in said sinking fund, which shall be redeemed at the par value thereof, due notice of the numbers of the bonds so designated having been previously published by the said party of the second part in two or more of the daily newspapers printed in the city of New York for sixty days, at the expiration of which interest on the bonds so designated shall cease, and the premises embraced in this mortgage shall thereafter be discharged from so much of the lien hereby imposed thereon as the bonds amount to thus designated for payment.    And it is further mutually agreed that the said party of the second part shall and will cancel and discharge each and every of the bonds secured by this mortgage, with all the interest coupons annexed thereto, which shall be redeemed as aforesaid, and will make or cause to be made upon each bond a brief note or memorandum, stating when the same was canceled and from whom said bond was received, in such manner and form as will enable the party of the first part to trace the transaction, and will immediately return so many bonds as are redeemed to the said party of the first part canceled, and that a proper registry and account of all the bonds so redeemed shall be kept by both of said parties hereto, and shall be open for the examination and inspection of any parties in interest at all reasonable times.    And the number or amount of said bonds canceled shall be reported by the said party of the first part to its stockholders in each of its annual statements."

The whole issue of bonds under the mortgage was 2,000, of the denomination of $1,000 each, making the aggregate principal of the bonds $2,000,000.    After this mortgage was made, and on or about January, 1871, the plaintiff acquired the property of the Tebo and Neosho Railroad Company and assumed and became charged with its obligations.    On February 1, 1871, plaintiff issued a new mortgage for the purpose, among other things, of taking up these Tebo and Neosho bonds and securing satisfaction of the mort-

gage. As the result, 1,651 of the bonds were received by the Union Trust Company as financial agent of plaintiff in exchange for bonds issued under the new mortgage. Afterwards the said new or substituted bonds were all paid in full and the mortgage of February 1, 1871, was satisfied of record. In addition to these 1,651 bonds, 159 others of the Tebo and Neosho issue were redeemed and paid by plaintiff under a plan of reorganization made in 1889 to retire its then existing indebtedness. These latter are held by the Central Trust Company subject to the order of the plaintiff for cancellation. There has been paid into the sinking fund enough to redeem three bonds, which payment was made in June, 1873, and no payment has been made since. These added together make 1,813 bonds practically in the possession and under the control of plaintiff, leaving but 187 of the Tebo and Neosho bonds outstanding. To discharge these the plaintiff wishes to pay into the sinking fund enough of the arrearages to pay or redeem all these 187 bonds, and thereupon to have the mortgage canceled. Whether it has the right to do so is the question before the court.

As the time fixed for the payment of the principal of the mortgage has not arrived, it is clear that the plaintiff has no right to pay what remains due to outstanding holders, unless such right is secured by the sinking fund provision in the mortgage, under which, as appears by its terms, the mortgagor was to pay $20,000 annually to the trustee for the purposes of the sinking fund and an equal amount of bonds was to be retired yearly. Such annual payments have never been made, the only amount received by the sinking fund and used to redeem bonds being, as already stated, sufficient to retire three of the bonds, which payment was made in 1873. Notwithstanding the fact, therefore, that nothing was done during all the intervening years towards carrying out the sinking fund provision, the plaintiff, claiming that it owes to this sinking fund an amount largely in excess of the outstanding bonds, insists on its right to make a payment to such fund which will redeem the whole number, so that the mortgage may be canceled and discharged of record. To this end the plaintiff, in the year 1895, offered to pay to the Union Trust Company the sum of $193,000, which offer was coupled with a request that so much of the said sum be put into the sinking fund as should be necessary to apply to the redemption of the

principal and interest of the 187 bonds still outstanding, and that the trust company call in these outstanding bonds, and that thereupon all the bonds, including those in the sinking fund and those held by the Central Trust Company itself, be canceled and destroyed, and that the Union Trust Company satisfy of record the mortgage of June 1, 1870. The Union Trust Company declined to accept the money and apply it as requested unless ordered so to do by the court.

Although no action has been taken looking towards the carrying out of the terms of the sinking fund provision since 1873, we do not think the plaintiff has lost its right to make payments into the sinking fund or to insist upon the carrying out of the sinking fund provision, its right in that respect not having been impaired either by the Statute of Limitations or by *laches*. But we do not think the construction contended for by plaintiff is correct, that it should be permitted to pay a sum of money into the sinking fund equal to the amount of the outstanding bonds, and thus compel the trust company to cancel the mortgage. Although by its terms the payment to be made annually to the sinking fund was fixed at $20,000 and interest, we find no expression of a right or option to pay a larger amount, or to pay off the entire mortgage whenever the railroad company should deem it for its advantage. While, therefore, the rights of the parties are to be determined by the terms of the mortgage, including the sinking fund provision, it is clear that the bondholder has as much right to insist that his bond shall not be retired, except according to the provisions of the mortgage, as he has to have it redeemed or paid according to the same provisions. If the payments had been made annually there would be left at the present time bonds outstanding and not redeemed amounting to $479,200, and this, assuming that all the money paid annually was applied to the redemption of outstanding bonds, and nothing was paid for expenses of administering the trust, in the way of advertising, drawing bonds, commissions, etc. Under a construction most favorable to plaintiff, therefore, if the sinking fund payments and redemptions had been regularly made, there would be outstanding to-day at least 479 bonds, and they could be redeemed only at the rate of $20,000 and interest thereon per year. The fact that the plaintiff has bought up or exchanged or in any other way obtained a number of the bonds in no way impairs the

obligation of the mortgage contract, and does not destroy the right of those holding the outstanding bonds to insist that they shall not be compelled to deliver them up until under the contract the railway company can require their delivery. The right of a lender not to receive his debt before it is due is quite as sacred as is his right to receive it when it is due. The debtor has no more right to pay the principal before it is due than he has not to pay it when it becomes due, and the rights of the creditor are correlative.

The plaintiff, then, not having the right to pay off these bonds at any time, but only at the rate of a certain number annually, there is no force in the contention that it can buy up or exchange or in some way obtain the Tebo and Neosho bonds and cancel them, and then apply any accumulation of sinking fund that it may choose to the redemption of such bonds as remain outstanding. This would be but another way of saying that the plaintiff had the right, whenever it chose, to pay off the bonds; which claim is manifestly unequal and unjust, because, taking the high rate of interest which these bonds bear of seven per cent, it is evident that the holders regard them as valuable, and they should not be obliged to accept less than their value, unless, under the agreement pursuant to which they were issued, the company, instead of buying them at their market value, has the right to pay them off at less, namely, at par. Having resort, therefore, to the contract between the parties, we think the position of the Union Trust Company, in refusing to accept the amount tendered by the plaintiff and cancel the mortgage, is correct. For if we assume that the terms of the mortgage were literally carried out, and that beginning in the year 1873 the $20,000 had been paid into the sinking fund and twenty bonds thereby redeemed, and that this course had been pursued in the year 1874, and the subsequent years down to the present time, it would make in June, 1895, twenty-two years from the first payment, and provision would thus have been made for twenty-two payments and redemptions; and applying all these payments to the bonds that have been exchanged or purchased by the plaintiff, it would leave all the bonds over the amount so redeemed which for the purposes of the sinking fund must be counted as still outstanding. The plaintiff is entitled to make the annual payments to the sinking fund, but to no greater and no less amount than is required by the

sinking fund provisions.   The result would be that the plaintiff in June of this year could pay such installment as then became due and apply the same to the redemption of bonds as provided by the terms of the Tebo and Neosho mortgage, and thus from year to year, pursuant to such terms, payments could be made and drawings of outstanding bonds had.

It will be noticed that the mortgage provides for the payment into the sinking fund of " a sum equal to one per cent of the aggregate principal of the bonds,   *   *   *   together with interest thereon at the rate of seven per cent per annum."   We do not think it necessary to determine from what time the interest runs, but, taking the view most favorable to the plaintiff, that the interest is from the date of the bonds and mortgage, this would make the first · payment amount to $20,000 and three years' interest in all, namely, $24,200 ; and, as shown by the computation of the defendant the Union Trust Company, if we add $1,400 interest for each successive installment, the total payments into the sinking fund in thirty years would be but $1,335,000, so that until the thirty years had rolled round the amount of bonds that could be retired by means of the sinking fund would be no more than the sum just stated.   The recital in the mortgage, therefore, that " by the operation of which sinking fund the whole principal of said bonds will be redeemed in thirty years from the date of the first annual payment," is erroneous.   But if we should assume that the plaintiff was at liberty, over and above the annual payment of $20,000 and interest, to pay into the sinking fund an amount sufficient to retire all the bonds at the end of thirty years, there would yet remain of such term eight years after the 1st of June, 1895, during which it would be necessary to make payments into the sinking fund for the redemption of such outstanding bonds as were not otherwise purchased or exchanged.   In any view, therefore, that we may take, except the one that the plaintiff has the absolute right at any time to pay off the bonds, which is not claimed, the sinking fund provisions cannot now be resorted to for the purpose of paying off the outstanding bonds upon the theory that the plaintiff, being indebted to the sinking fund in a sum exceeding the amount of the bonds outstanding, has the right to direct the application of such sinking fund to a discharge of such outstanding bonds; disregarding the part which such as have been purchased or

exchanged must play in a fair and just construction to be given to the terms of the mortgage as bearing upon the rights of the holders of the outstanding bonds.

Our conclusion, therefore, is that the Union Trust Company was right in its refusal to accept the amount tendered, coupled with the condition that it should be applied to the paying off of the outstanding 187 bonds and the mortgage to secure them canceled, and there should be judgment accordingly for the defendant Union Trust Company, with costs.

Van Brunt, P. J., and Parker, J., concurred.

Judgment ordered for defendant the Union Trust Company, with costs.